UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| James Roosevelt McCray, | ) | C/A No. 8:24-cv-1638-BHH-WSB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Bryan P. Stirling, B. Bibbs, Coata Kimbrell, | ) | |
| John Palmer, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 66) and Plaintiff's Motion for Summary Judgment (ECF No. 69). Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983.[1] ECF No. 31. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this United States Magistrate Judge is authorized to review all pretrial matters in cases filed under § 1983 and submit findings and recommendations to the district court.

**BACKGROUND AND FACTUAL ALLEGATIONS**

Plaintiff is currently incarcerated at Evans Correctional Institution in the South Carolina Department of Corrections ("SCDC"). SCDC Inmate Search, https://public.doc.state.sc.us/scdc-

---

[1] Plaintiff also indicated that he was bringing this action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court of the United States established a cause of action against federal officials for the violation of federal constitutional rights. *Id.* However, Plaintiff has only sued state officials. *See* ECF No. 31. Accordingly, to the extent Plaintiff is bringing any claims pursuant to *Bivens,* the undersigned recommends that those claims be dismissed.

1

public/ (last visited July 28, 2025). Plaintiff alleges that sometime between 1:00 p.m. and 3:00 p.m. on January 22, 2024, while incarcerated at McCormick Correctional Institution ("MCI"), Coata Kimbrell ("Kimbrell") and B. Bibbs ("Bibbs") used force on him in his cell in the Restrictive Housing Unit ("RHU") because he asked to talk to the warden. ECF No. 31 at 6. Plaintiff alleges that Bibbs pushed him, which caused him to fall on the ground. *Id.* Plaintiff alleges that at that point, Bibbs and Kimbrell started to kick him and punch him in the face and back. *Id.* Plaintiff alleges that John Palmer ("Palmer") violated SCDC policy by not using an institution camera to document the incident of force and did "not place a separation of the officers or me." *Id.* at 4. Plaintiff contends that he cried out for help, and Bibbs and Kimbrell left his cell. *Id.* at 6.

Kimbrell provided an affidavit in which he testified that on the day in question, he and another officer were escorting Plaintiff to his cell. ECF No. 66-8 ¶ 6. Because Plaintiff was housed in the RHU, he was restrained using handcuffs, leg shackles, and a retrieval chain. *Id.* ¶¶ 4, 6. Upon arriving at the cell door, Plaintiff "said that he was not going to let us take off his restraints," which surprised Kimbrell as "most inmates are glad to have their restraints removed because the handcuffs and leg shackles are not really made for comfort." *Id.* ¶ 7. At that point, Bibbs arrived and took over the interaction with Plaintiff. *Id.* ¶ 8. Bibbs explained that the officers were trying to obtain the restraints so that Plaintiff "could go hang out in his cell," but Plaintiff said that he wanted to talk to the warden. *Id.* Bibbs explained that Plaintiff could talk to the warden later during rounds but that they needed to get the restraints off of Plaintiff and secure him in his cell. *Id.* ¶ 9. Plaintiff then said that he "wasn't giving up the restraints" and they would have to "beat him like they did at Broad River to get the chains back." *Id.* ¶ 10. At that point, Plaintiff "suddenly dropped to the floor." *Id.* ¶ 11. Kimbrell testified that Bibbs was holding the retriever chain, and Kimbrell "dropped down on top of [Plaintiff's] legs to secure them in place." *Id.* ¶ 12. The other

2

officer also dropped down and removed the leg irons from Plaintiff's ankles. *Id.* Kimbrell testified that Plaintiff did not kick or otherwise try to prevent the leg irons from being removed. *Id.* ¶ 17. The officers then exited the cell and secured the door. *Id.* ¶ 13. Plaintiff's arms "were brought through the flap and the handcuffs removed." *Id.* ¶ 14. The other officer pushed Plaintiff's arms back inside the door, and Kimbrell shut the flap. *Id.* Kimbrell testified that Plaintiff was not punched, kicked, or taken to the ground. *Id.* ¶ 17. Bibbs provided an affidavit, which corroborated Kimbrell's testimony. ECF No. 66-10 ¶¶ 3-12. Bibbs also testified that no strikes, punches, kicks, or other physical techniques or force were used on Plaintiff. *Id.* ¶ 12.

Plaintiff alleges that he asked for medical after the incident but was denied care until the night staff arrived around 7:30 p.m. ECF No. 31 at 6-7. Plaintiff alleges that the medical staff then informed him that they could not remove him from his cell because "it was night staff and they don't have many officers working that night." *Id.* at 7. Plaintiff contends that "medical only look[ed] at [him through] the [window] of [his] cell" and said he "look[ed] ok[a]y." *Id.* Plaintiff alleges that he experienced pain in his face, the back of his head, and his upper back. *Id.* Plaintiff appears to allege that he was going through "a mental issue" during this incident because of a previous event in which "[he] got beat[en] up in detain and … required medical treatment ...." *Id.*

Plaintiff alleges that Bryan P. Stirling ("Stirling") is liable because the excessive force occurred in Stirling's department and the staff lacked training based on the violations of SCDC policies. ECF No. 31 at 5.

Records reflect that Plaintiff was evaluated by a nurse on the evening in question, and the nurse documented that Plaintiff reported being involved in a use of force but "[n]o use of force was used against this inmate per security." ECF No. 66-7 at 1. The nurse documented that Plaintiff reported that he was punched in the face, but "no bruising, no swelling or redness [was] noted."

3

*Id.* The nurse documented that Plaintiff reported that a knee was "placed in his neck," but his neck was observed with a flashlight and "no bruising or swelling [was] noted." *Id.* Plaintiff reported feeling like "something in his hip/abdomen [was] broken," but the nurse documented that Plaintiff was "standing at the cell door w/out difficulty shifting his weight from left to right w/out issues." *Id.* The nurse advised Plaintiff to monitor his symptoms and that she would bring him ibuprofen during the morning pill pass. *Id.* Plaintiff was "demanding" that the nurse "write a report," but she informed Plaintiff that she "did not see anything to write a report about." *Id.*

Plaintiff filed an Amended Complaint on July 1, 2024, alleging claims against Defendants in their individual and official capacities based on due process violations, excessive force, and deliberate indifference to his serious medical needs in violation of the Fourth, Eighth, and Fourteenth Amendments, as well as a state law civil conspiracy claim. ECF No. 31.

Defendants filed a Motion for Summary Judgment on January 29, 2025. ECF No. 66. On the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the motion to dismiss and motion for summary judgment procedures and the possible consequences if he failed to respond adequately. ECF No. 67. Plaintiff filed a Response on March 7, 2025, and Defendants filed a Reply on March 14, 2025. ECF Nos. 74; 78. Plaintiff filed a Motion for Summary Judgment on February 3, 2025. ECF No. 69. Defendants filed a Response on February 11, 2025. ECF No. 71. On March 3, 2025, Plaintiff filed a Motion to Compel, to which Defendants filed a Response on March 12, 2025. ECF Nos. 73; 76. These matters are ripe for review.

**APPLICABLE LAW AND ANALYSIS**

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Section 1983**

Section 1983 provides a private cause of action for constitutional violations by persons acting under color of state law. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

**Defendants' Motion for Summary Judgment**

*Official Capacity Claims*

Defendants argue that they are entitled to Eleventh Amendment immunity on Plaintiff's claims against them in their official capacities. ECF No. 66-1 at 4-7. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See e.g., Alabama v. Pugh*, 438

U.S. 781, 782 (1978) (citations omitted).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office … [and] is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

"As a state agency, SCDC is an arm of the State of South Carolina."  *Ellerbe v. Cook*, C/A No. 1:20-1630-BHH-SVH, 2020 WL 4926339, at *1 (D.S.C. Aug. 21, 2020) (citation and internal quotation marks omitted).  Moreover, there is no dispute that at the time of the incident in question, Defendants were employed by SCDC.  Accordingly, summary judgment should be entered on Plaintiff's official capacity claims against Defendants.  *See Benjamin v. S.C. Dep't of Corr.*, C/A No. 9:20-cv-01673-TLW-MHC, 2021 WL 3023693, at *2 (D.S.C. May 28, 2021).  Plaintiff's claims against Defendants in their individual capacities are addressed below.

### *Excessive Force Against Kimbrell and Bibbs*

As an initial matter, Defendants argue that they are entitled to summary judgment on any Fourth Amendment claim because Plaintiff is a prisoner within SCDC's custody.  ECF No. 66-1 at 7.  The undersigned agrees, as excessive force claims in effectuating an arrest are governed by the Fourth Amendment while excessive force claims in subduing a convicted prisoner are analyzed under the Eighth Amendment.  *Graham v. Connor*, 490 U.S. 386, 394-95 & n.10 (1989).

The Eighth Amendment's prohibition against "cruel and unusual punishments," U.S. Const. amend. VIII, includes "the use of excessive physical force against a prisoner."  *Hudson v. McMilliam*, 503 U.S. 1, 4 (1992).  In order to recover on an Eighth Amendment excessive force

claim, a plaintiff must establish that a "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citation and internal quotation marks omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* at 238 (citation and internal quotation marks omitted).

The subjective component of this analysis is "a demanding standard." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Parker v. Stevenson*, 625 F. App'x. 196, 198 (4th Cir. 2015) (citation and internal quotation marks omitted). "The question is not whether a reasonable officer *could* have used force to maintain discipline, but whether these particular officers *did* use force for that reason." *Brooks*, 924 F.3d at 113 (emphasis in original). "[D]irect evidence of motive or intent may be hard to come by." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). For that reason, the Fourth Circuit has identified four, non-exhaustive factors ("*Whitley* factors") to consider when determining whether a prison official's actions were carried out maliciously and sadistically to cause harm:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Id.* (quoting *Iko*, 535 F.3d at 239); *see Whitley v. Albers*, 475 U.S. 312, 321 (1986). Courts must also give "wide-ranging deference" to the execution of policies and practices that are necessary

8

"to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321-22 (citations and internal quotation marks omitted).

For the objective component, a plaintiff must show that "the alleged wrongdoing is objectively harmful enough to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (citations and internal quotation marks omitted). Unlike the subjective component, "[t]his is not a high bar, requiring only something more than *de minimis* force." *Brooks*, 924 F.3d at 112 (citations and internal quotation marks omitted). "'[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation,'" and it may also provide an indication of the amount of force that was applied. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (citation and internal quotation marks omitted). Nevertheless, when prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of how significant a plaintiff's injury may be. *Hudson*, 503 U.S. at 9; *see Wilkins*, 559 U.S. at 37.

Plaintiff alleges that Bibbs pushed him in his cell, which caused him to fall on the ground. ECF No. 31 at 6. Plaintiff further alleges Bibbs and Kimbrell kicked him and punched him in the face and back. *Id.*

Kimbrell provided an affidavit in which he testified that on the day in question, he and another officer were escorting Plaintiff back to his cell. ECF No. 66-8 ¶ 6. Because Plaintiff was housed in the RHU, he was restrained using handcuffs, leg shackles, and a retrieval chain. *Id.* ¶¶ 4, 6. Upon arriving at the cell door, Plaintiff "said that he was not going to let us take off his restraints," which surprised Kimbrell as "most inmates are glad to have their restraints removed because the handcuffs and leg shackles are not really made for comfort." *Id.* ¶ 7. At that point, Bibbs arrived and took over the interaction with Plaintiff. *Id.* ¶ 8. Bibbs explained that the officers

9

were trying to get the restraints so that Plaintiff "could go hand out in his cell," but Plaintiff said that he wanted to talk to the warden. *Id.* Bibbs explained that Plaintiff could talk to the warden later during rounds but that they needed to get the restraints off of Plaintiff and secure him in the cell. *Id.* ¶ 9. Plaintiff then said he "wasn't giving up the restraints" and that they would have to "beat him like they did at Broad River to get the chains back." *Id.* ¶ 10. At that point, Plaintiff "suddenly dropped to the floor." *Id.* ¶ 11. Bibbs was holding the retriever chain at that point, and Kimbrell "dropped down on top of [Plaintiff's] legs to secure them in place." *Id.* ¶ 12. The other officer also dropped down and removed the leg irons from Plaintiff's ankles. *Id.* Plaintiff did not kick or otherwise try to prevent the leg irons from being removed. *Id.* ¶ 17. The officers then exited the cell and secured the door. *Id.* ¶ 13. Plaintiff's arms "were brought through the flap and the handcuffs removed." *Id.* ¶ 14. The other officer pushed Plaintiff's arms back inside the door, and Kimbrell shut the flap. *Id.* Kimbrell testified that Plaintiff was not punched, kicked, or taken to the ground. *Id.* ¶ 17. Bibbs provided an affidavit, which corroborated Kimbrell's testimony. ECF No. 66-10 ¶¶ 3-12. Bibbs testified that no strikes, punches, kicks, or other physical techniques or force were used on Plaintiff. *Id.* ¶ 12.

Plaintiff was evaluated by a nurse that evening, and the nurse documented that Plaintiff reported being involved in a use of force but "[n]o use of force was used against this inmate per security." ECF No. 66-7 at 1. The nurse documented that Plaintiff reported that he was punched in the face, but "no bruising, no swelling or redness [was] noted." *Id.* The nurse documented that Plaintiff reported that a knee was "placed in his neck," but his neck was observed with a flashlight and "no bruising or swelling [was] noted." *Id.* Plaintiff reported that he felt like "something in his hip/abdomen [was] broken," but the nurse documented that Plaintiff was "standing at the cell door w/out difficulty shifting his weight from left to right w/out issues." *Id.* The nurse advised

10

Plaintiff to monitor his symptoms and that she would bring him ibuprofen during the morning pill pass. *Id.* Plaintiff was "demanding" that the nurse "write a report," but she informed Plaintiff that she "did not see anything to write a report about." *Id.*

Plaintiff has failed to provide any evidence to support his conclusory allegations that Kimbrell and Bibbs used excessive force on him. Specifically, Plaintiff has not presented any evidence that Kimbrell and Bibbs applied force maliciously or sadistically to cause harm or that the force was more than *de minimis*. Without more, Plaintiff cannot survive Defendants' Motion for Summary Judgment, which is supported by affidavits from Kimbrell and Bibbs, as well as documentation from the nurse who examined Plaintiff on the evening of the incident and did not note any injuries. ECF Nos. 66-7; 66-8; 66-10. *See Matherly v. Andrews*, 859 F.3d 264, 280 (4th Cir. 2017) ("Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence.") (citations and internal quotation marks omitted); *Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015) ("[A] party cannot withstand summary judgment by relying solely on his own self-serving allegations unsupported by any corroborating evidence.") (citation omitted); *Brown v. Fishburne*, C/A No. 6:19-cv-3300-TMC-KFM, 2021 WL 852216, at *4 (D.S.C. Jan. 19, 2021) ("While the plaintiff alleges that Operator Fishburne choked him, mauled his head on the ground, and put his knee in his back shoulder area, the plaintiff has failed to present any evidence supporting these allegations. Rather, the plaintiff's self-serving assertions, without more, are insufficient to survive a well-supported motion for summary judgment."), *R&R adopted by* 2021 WL 567867 (D.S.C. Feb. 16, 2021). Accordingly, the undersigned recommends that the district court grant summary judgment to Kimbrell and Bibbs on Plaintiff's excessive force claims.

### *Deliberate Indifference Against Kimbrell and Bibbs*

Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated. *See Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). When a prison official demonstrates "deliberate indifference" to an inmate's serious medical needs, a constitutional violation occurs under the Eighth Amendment. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 101–06 (1976). To state a claim under § 1983 for deliberate indifference to serious medical needs, a prisoner must show that he had a serious medical need and that officials knowingly disregarded that need and the substantial risk it posed. *King v. Rubenstein*, 825 F.3d 206, 218–20 (4th Cir. 2016); *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–11 (4th Cir. 2017). A "serious medical need" is a condition "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Heyer*, 849 F.3d at 210 (citation omitted). An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregarded them. *See Scinto*, 841 F.3d at 225–26.

Plaintiff alleges that force was used between 1:00 p.m. and 3:00 p.m., he asked for medical care after force was used, and he was denied care until the night staff arrived around 7:30 p.m. ECF No. 31 at 6-7. Plaintiff further alleges that the medical staff only examined him through the window of his cell. *Id.* at 7. Plaintiff claims to have experienced pain in his face, the back of his head, and his upper back. *Id.* Defendants have produced evidence reflecting that a nurse examined Plaintiff on the evening in question and noted no bruising or swelling on Plaintiff's face and neck. ECF No. 66-7 at 1. *See Workman v. Bodiford*, C/A No. 6:18-355-RBH-KFM, 2018 WL 6933427, at *3 (D.S.C. Oct. 9, 2018) ("In determining whether a prison official is deliberately indifferent to a prisoner's serious medical needs, the court may generally rely on medical records concerning

examination and treatment of the prisoner."), *R&R adopted by* 2018 WL 6829015 (D.S.C. Dec. 28, 2018). Plaintiff's allegations, without evidentiary support, fall short of surviving Defendants' Motion for Summary Judgment. Plaintiff has failed to set forth any evidence that he had a serious medical need or that Defendants had actual knowledge of his serious medical needs and the related risks but nevertheless disregarded them. The medical evidence in the record demonstrates that Plaintiff did not have a condition diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *See* ECF No. 66-7 at 1. Based on the foregoing, Defendants' Motion for Summary Judgment should be granted on Plaintiff's deliberate indifference claims against Kimbrell and Bibbs.

### *SCDC Policy Violations*

Plaintiff argues that Defendants are liable under § 1983 for violating SCDC policies, including policies regarding cameras in the RHU, medical care, and use of force. ECF Nos. 31 at 4-5; 74 at 1-3. However, violations of SCDC policies do not amount to constitutional violations. *See Joyner v. Patterson*, C/A No. 0:13-cv-2675-DCN-PJG, 2014 WL 897121, at *4 (D.S.C. Mar. 6, 2014) ("Section 1983 provides relief from a violation of federal constitutional rights, not from a violation of prison-created policies or procedures."), *R&R adopted by* 2014 WL 3909531 (D.S.C. Aug. 11, 2014), *aff'd by* 597 F. App'x 748 (4th Cir. 2015). Therefore, the undersigned recommends that the district court dismiss Plaintiff's claims based on violations of SCDC's policies.

### *Claims Against Palmer and Stirling*

Plaintiff's only allegation in the Amended Complaint against Palmer is that Palmer violated SCDC policy by not using an institution camera to document the excessive force and did "not place a separation of the officers or me." ECF No. 31 at 4. As noted, violations of SCDC policies do not amount to constitutional violations. *See Joyner*, 2014 WL 897121, at *4. Moreover, to the

extent Plaintiff is arguing that Palmer is liable under a theory of bystander liability, Plaintiff has failed to allege any specific facts regarding Palmer's presence during the use of force, Palmer knowing that officers were violating Plaintiff's constitutional rights, or Palmer having an opportunity to prevent the harm. *See Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002) (noting that to succeed on a theory of bystander liability, a plaintiff must demonstrate that a law enforcement officer "(1) [knew] that a fellow officer [was] violating an individual's constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) cho[se] not to act.").

In the Amended Complaint, Plaintiff only alleges that Stirling is liable because the use of force occurred in Stirling's department and the staff lacks training based on the violations of SCDC policies. ECF No. 31 at 5. In his Response to Defendants' Motion for Summary Judgment, Plaintiff appears to argue that both Stirling and Palmer are liable in their supervisory capacities. *See* ECF No. 74 at 1; *see also* ECF No. 69 at 1. To the extent Plaintiff alleges that Stirling and Palmer are liable under a theory of *respondeat superior* for the actions of other SCDC employees, that doctrine is generally inapplicable to § 1983 claims. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Vinnedge v. Gibbs*, 550 F.2d 926, 928–29 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* has no application under § 1983).

In order to proceed on a supervisory liability theory, a plaintiff must show: (1) a supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit

14

authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). In *Randall*, the United States Court of Appeals for the Fourth Circuit concluded that, "[u]nder the first prong of *Shaw*, the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" 302 F.3d at 206 (quoting *Shaw*, 13 F.3d at 799). Furthermore, in establishing deliberate indifference under *Shaw's* second prong, a plaintiff "[o]rdinarily ... cannot satisfy his burden of proof by pointing to a single incident or isolated incidents ... for a supervisor cannot be expected ... to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

Plaintiff has failed to set forth any specific factual allegations regarding all of the elements of this claim, including Stirling and Palmer's knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to people like Plaintiff, Stirling and Palmer's response was so inadequate as to constitute deliberate indifference or tacit authorization of other officers' conduct, and an "affirmative causal link" between Stirling and Palmer's inaction and Plaintiff's constitutional injury. Therefore, summary judgment should be granted for Palmer and Stirling.

### *Qualified Immunity*

Defendants argue that they are entitled to qualified immunity on Plaintiff's federal claims against them in their individual capacities. ECF No. 66-1 at 17-18. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014); *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  As discussed above, Plaintiff has failed to show a genuine issue of material fact on his claims that Defendants violated his constitutional rights.  Therefore, the undersigned recommends that the district court find that Defendants are entitled to qualified immunity.

### *Due Process Violations Against Kimbrell and Bibbs*

Plaintiff alleges that his Fourteenth Amendment due process rights were violated.  ECF No. 31 at 5.  Plaintiff does not indicate the basis for this claim or allege the required deprivation of a life, liberty, or property interest.  *See* ECF No. 31; U.S. Const. amend. XIV, § 1 (providing that no "State [shall] deprive any person of life, liberty, or property, without due process of law."); *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015) ("[A] plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.").  Plaintiff naming a due process violation without providing any factual allegations or evidence in support of such claim fails to survive Defendants' Motion for Summary Judgment. *See Deabreu v. Novastar Home Mortg., Inc.*, 536 F. App'x 373, 375 (4th Cir. 2013) ("While pro se pleadings must be construed liberally, courts are not required to conjure up questions never squarely presented to them.") (internal citations and quotation marks omitted).

*Civil Conspiracy*

Plaintiff also brought a state law claim for civil conspiracy. ECF No. 31 at 5. To establish a civil conspiracy, a plaintiff must show: "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021). Plaintiff does not allege which Defendant allegedly agreed with which other Defendant to accomplish an unlawful act, what the substance of such an agreement was, and what specific acts were purportedly committed in furtherance of such agreement. Accordingly, Defendants Motion for Summary Judgment should be granted. *See Deabreu*, 536 F. App'x at 375.[2]

**Plaintiff's Motion for Summary Judgment**

Plaintiff filed a Motion for Summary Judgment, arguing that Defendants should be liable for deliberate indifference, excessive force, and violation of SCDC policies. ECF No. 69 at 1. However, the Court has drawn all reasonable inferences in Plaintiff's favor and recommended that

---

[2]    Plaintiff appears to argue that Defendants' Motion for Summary Judgment should be denied because of "lack of subject-matter jurisdiction" and "insufficient service of process." ECF No. 74 at 1. However, the Court has subject matter jurisdiction over this matter based on Plaintiff's § 1983 claims, which raise a federal question. *See* 42 U.S.C. § 1983; 28 U.S.C. § 1331. Moreover, as explained by Defendants, Plaintiff does not indicate what document was not served properly, and this affirmative defense has no bearing on the Motions presently before the Court, Fed. R. Civ. P. 4. Accordingly, Plaintiff's arguments are without merit.

Plaintiff also appears to argue that Defendants' Motion should be denied based on Defendant failing to provide an affidavit from the Office of Inspector General – the Office that investigated a grievance he filed about the alleged excessive force. ECF No. 74 at 1. However, information related to Plaintiff's grievance would be information that Plaintiff already possesses and would not alter the analysis on the parties' Motions for Summary Judgment.

Defendants' Motion for Summary Judgment be granted on all of Plaintiff's claims. Therefore, Plaintiff's Motion for Summary Judgment should be denied.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the district court **GRANT** Defendants' Motion for Summary Judgment (ECF No. 66) and **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 69).

**IT IS SO RECOMMENDED.**

s/William S. Brown
United States Magistrate Judge

July 29, 2025
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 250 East North Street, Suite 2300
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).